P. M. BEWLEY, Administrator, v. W. C. COLEMAN.

Eastern Section. —— —, ——.

John R. King, for appellant.
Ernest R. Taylor and Geo. F. McConless, for appellee.

SNODGRASS, J.  The bill in this cause was filed by the administrator of Hale Temple deceased to wind up a partnership, dissolved by the death of his intestate, but which had previously existed with the defendant W. C. Coleman in a mercantile business in Morristown.  One of the principal contests arising under their bill being as to whether or not the house and lot in which the business had been conducted was partnership property.

In the answer of Coleman it was denied that the real estate mentioned had any relationship as partnership property, and he filed the same as a cross-bill, claiming to own individually an undivided one-half of the store house and that the widow and heirs of the said A. H. Temple, deceased, owned the other one-half as tenants in common, the widow being entitled to dower it was claimed.

These were all made parties to the cross-bill along with the administrator and a guardian ad litem was appointed for two of the defendants who were children of a deceased son and minors.

The cross-bill sought a sale of the house and lot for partition alleging it was not susceptible of partition in kind.

Regarding the partnership it was admitted to have existed as a small mercantile affair though it was denied that it involved the real estate, for which reason it was claimed that defendant Coleman was not required to sell it, and as to the condition of the partnership.  It was admitted that upon the death of the said Hale he had made an inventory of the small stock of merchandise and that the same was sold by him, but it was denied that, if the house and lot were listed as partnership assets, it was done by his direction and it was insisted that if it so appeared he did not know it was included in the inventory.  It was admitted that he had received some rent from said building owned by himself and Temple as tenants in common but it was claimed it had been expended in paying taxes, insurance and small repair bills, and it was admitted that he had a small amount in his hands belonging to the estate of the deceased and he was ready the answer averred to pay the same over.

It appeared from the answer and cross-bill that the said Hale and Coleman had purchased the store house and lot with the stock of goods on the 23rd day of February, 1923, from one John F. Smith

and wife Dora Smith the allegation in relation thereto being as follows:

"Said tract of land is described as above and was held by these parties as tenants in common. There was also certain merchandise and fixtures sold to said Temple and this defendant, the consideration for said real estate and merchandise was the sum of $1800, $800 cash was paid and the remainder of said consideration was evidenced by a promissory note due, one year from date. The defendant, Temple paid the $800 cash consideration, the defendant Coleman paid the note and interest and in addition, $100 in cash, making the total amount paid by Coleman $1060 and the total amount paid in by Temple of $800. The original of said deed is herewith filed as exhibit "A" and made a part of said cross-bill, and as will be seen from an inspection the habendum clause of said deed is as follows:

"To have and to hold the above conveyed premises unto the said A. H. Temple and W. C. Coleman as tenants in common and to their heirs and assigns in fee simple forever."

Regarding the partnership assets and obligations there is the following appearing from the answer and cross-bill:

"After said Temple died, the defendant, Coleman, invoiced said stock of goods and sold Temple's interest in said stock of goods for $358.42 which was the amount that said stock of goods inventoried.

"The partnership owed certain partnership obligations for merchandise bought from wholesale houses in Morristown, and the following partnership obligations were paid by this defendant to-wit:

"Morristown Grocery Co. $17.56, J. F. Goodson & Co., $227.65, J. Allen Smith of Knoxville, Tennessee, $8.70, S. M. Holtsinger Co., $3.98.

"The defendant and cross-complainant has also paid certain taxes, and insurance which were necessary for the preservation of said building.

"This defendant would respectfully show to your honor that as above stated, Hale Temple, deceased, actually paid into said business the sum of $800 and this defendant and cross-complainant actually paid in the sum of $1160 up until the time of the death of the said Temple, since that time, the defendant, and cross-complainant has paid out of his own pocket additional money for taxes which will be fully shown in proof."

Process was asked to be issued and served on complainants P. M. Bewley, Betty Temple, Emma Coleman, Gertrude Paine, as resident defendants and that publication be made for the defendants Pearl Bell, Will Temple, John Temple and Earl Temple as non-resident

defendants and that guardian ad litem be appointed for the minor defendants John and Earl Temple.

The court was asked to decree that the cross-complainant Coleman and Hale held the deed as tenants in common and that a sale for partition be decreed. But if it was not so held, that the court decree a sale of the same for partition among the partners after the payment of partnership debts, and that an order of reference be had in order that the defendant and cross-complainant may properly account for all moneys that came into his hands as surviving partner, and for general relief.

The guardian ad litem answered placing his wards under the protection of the court.

The original complainant answered maintaining his former position denying that cross-complainant Coleman and the deceased owned the real estate described as tenants in common. But insisting that the manner of the conveyance and the term "tenants in common" as contained in the deed was not inconsistent with the idea of partnership but on the other hand was entirely consistent with such idea.

The answer then set out that theretofore on May 2, 1924, cross-complainant W. C. Coleman filed his original petition in the county court of Hamblin county against the widow and heirs at law of said Temple in which be alleged that said real estate was owned by himself and said Temple, deceased as tenants in common, each. owning an undivided one-half interest, the title to said Temple's individual one-half interest descending to his heirs at law subject to the rights of said Temple's widow under the law and praying for a sale of said property for partition between himself and the heirs at law and widow of said Temple; that the widow of said Temple and one of the heirs at law filed their answer assuming that said deceased and Coleman were partners in business and that said real estate was part of their partnership property and that same was not held by them as tenants in common and that it was not only the right but the duty of said Coleman as surviving partner of said firm to sell said real estate as other assets of said firm and pay its debts; that said Coleman had begun the winding up the partnership by invoicing, including the real estate, as part thereof, and by selling said Temple's undivided one-half interest in said merchandise and fixtures in said store, etc., etc.; that these facts were pleaded in abatement to said Coleman's bill and that upon the issues thus made said Coleman's deposition was taken and the cause was heard by the chairman of the county court on the pleadings and proof, including the inventory filed by said Coleman of said partnership estate on January 6, 1926, when the plea in abatement was held good and said bill dismissed from which no appeal was taken.

These proceedings were pleaded and relied upon as conclusive of the effort now to sell said land in and through this proceeding for partition. The widow and heirs it was claimed all being before the court in that proceeding on the question as to whether or not said real estate formed a part of said partnership property, notice was given and the record in said cause was filed in this cause as substantiating such claim.

It is proper to state that the final decree in said county court case was withheld, it seems by agreement, until September 25, 1926, and then entered nunc pro tunc.

The answer that professed to know nothing of what cross-complainant received for Temple's interest in the property, nor as to what indebtedness was owing said partnership, nor as to taxes and insurance paid and required strict proof, averred, upon information and belief, that the deceased actually paid into said partnership business the sum of $800, and that cross-complainant Coleman paid in $100, and that they gave their note to John F. Smith for $1000 due one year after date, and which was not due but outstanding and unpaid at the death of said Temple and upon this information it was denied that cross-complainant paid in the sum of $1,160 prior to the death of said Temple.

It was then averred that cross-defendant Betty Temple was the widow of A. H. Temple deceased and that cross-defendant Emma Coleman was his daughter by a former marriage; the other defendants mentioned as his heirs were not known to be such and strict proof was required as to the alleged relationship, but it was claimed that neither the widow nor heir were necessary parties to the winding up of the partnership.

It was claimed that as absolute title was vested in the surviving partner and as it was his duty to sell the real estate with other assets to pay debts that the court had no jurisdiction over said real estate and could make no valid decree to sell same in this cause for reason that title being absolute in Coleman and waiver of sale being absolute in him he cannot bring suit to sell his own property making artificial defendants to his said suit to give it the appearance of a cause of action; that if the court should assume jurisdiction of said real estate and sell same at instance of cross-complainant that it would be manifestly unjust and inequitable to charge the estate of said Temple with any part of the cost incident to the sale of said real estate including counsel fee for cross-complainant's solicitor and guardian ad litem fees for the minor defendants. And it is claimed, if the court should hold that Temple and Coleman were partners in said real estate, that the court is without jurisdiction to sell the property for partition in accordance with the prayer of the cross-bill.

The other defendants to the cross-bill did not answer and pro confesso was had against them.

Upon the issues thus made the cause was heard before the Chancellor at a special term of the Chancery court held on the 14th day of April, 1927, upon the whole record and upon the record referred to in the county court cause, and without passing upon the question of whether the real estate involved in the cause was owned by said Temple or Coleman as partners or whether it was owned as tenants in common, which question was expressly reserved by the court, it was determined that the real estate should be sold without further delay, it being also determined, in view of the questions presented respecting the title to the same, that a sale of said real estate by the clerk and master of the court would be more advantageous to the parties interested than otherwise, it was ordered that the property be sold by the clerk and master to the highest and best bidder for one-third cash and the balance on a credit of six and twelve months, with other writings contained in the decree including the bar of the equity of redemption. He was directed to report his action to the next term of the court.

Adjudging the same to be a proper case for such action the clerk and master was directed to hear proof and report to the next term upon the following items:

"1. Who are the lawful heirs of Hale Temple, deceased.

"2. What personal property came into the hands or by the exercise of due diligence should have come into the hands of W. C. Coleman as surviving partner of the partnership business of Temple and Coleman.

"3. What indebtedness was owing by the firm of Temple and Coleman at the date of the death of said Temple.

"4. What indebtedness of said firm has the said W. C. Coleman paid since the death of said Temple.

"5. What funds if any has W. C. Coleman in his possession belonging to said firm.

"6. The amount of the capital of said firm, the interest of each partner in same; the amount paid in by each partner and the amount owing by each on account thereof, at the date of said Temple's death, if any.

"7. The reasonable fair market value of said real estate above described at the date of said Temple's death.

"8. The fair reasonable rental value of said real estate per month.

"9. Whether or not said store building has been allowed to get into bad state of repair since the death of said Temple and if so, to what extent its fair market value has been depreciated on account thereof."

The real estate was advertised, and sold under this direction at the price of $325 which was reported to the next term when and where after opening the bidding a final sale of it was had at the price of $387, but sold subject to the street paving assessment or tax, that became due against said property on or after the date of confirmation of the sale, in other words, the purchaser assumed and agreed to pay all street paving assessments or tax assessed against said property that would become due and payable after the date of confirmation of the sale.

There was no exception to this branch of the report and it was confirmed.

The master having failed to execute the order of reference the same was revived and he was directed to report at the next term.

However at the May term, 1928, in advance of the report theretofore ordered, the case came on again to be heard before the Chancellor upon the entire record, and upon the county court record hereinbefore referred to from all of which it was recited "the court doth find and decree that the defendant W. C. Coleman and the deceased A. H. Temple, under the deed from John F. Smith and wife dated the 23rd day of February, 1923, the original of which is made an exhibit to the original petition filed in the case of W. C. Coleman v. Betty Temple et al., in the County Court of Hamblen County, Tennessee, took said lands therein conveyed, being the same real estate sold by a former decree in this cause, as tenants in common and not as partners and that they are entitled to share in the proceeds of said lands so sold in this cause as tenants in common, each being vested with an undivided one-half interest in said premises.

"It further appearing to the court that after the death of said A. H. Temple, the defendant, W. C. Coleman, out of his own means, paid off and discharged the note for $1000 given by said W. C. Coleman and A. H. Temple to J. F. Smith, in the purchase of said lands, the amount paid by the said W. C. Coleman in the discharge of said note, including principal and interest, being the sum of $1060, and that said note constituted a vendor's lien upon said premises, the court is of the opinion and holds that the said W. C. Coleman, having paid off and discharged said note, is entitled to be subrogated to the rights of the holder of said note and he is given a first lien on all of the proceeds derived from the sale of said land, which should otherwise go to the widow and heirs at law of A. H. Temple, deceased being that part of the purchase price of said lands which will remain in the hands of the master after the paying of all of the costs incident to the sale of said premises.

"Out of the proceeds arising from the sale of said lands, the master will pay all of the costs incident to the sale of said lands, including a fee of $75 to McCanless, Taylor and Bell, for services rendered the cross-complainant, W. C. Coleman in this cause.

"The court is of the opinion and decrees that the original bill filed herein by the complainant as administrator of the estate of A. H. Temple should be and the same is dismissed in so far as said bill was brought for the purpose of compelling W. C. Coleman as surviving partner to sell such real estate, as such surviving partner, but the bill is sustained as a bill to wind up the partnership of Temple & Coleman and for a settlement of the partnership accounts.

"It further appearing to the court that the order of reference heretofore entered in this cause has not been executed, the same is in all things revived and the master is instructed to, immediately upon the entering of this decree, execute said order of reference and file his report showing the execution of said order.

"To the action of the court in holding said real estate was not held by said Coleman and Temple as partners, but that it was held by them as tenants in common, and in dismissing complainant's original bill in so far as it sought to compel said Coleman, as surviving partner to sell said real estate, as surviving partner; and in holding said real estate was held by said Temple & Coleman as tenants in common and sustaining the cross-bill in that particular and in adjudging costs and attorney's fees incident to the sale of said real estate to be paid out of the funds arising from the sale of same; and in subrogating said Coleman to the rights of the original holder of said $1000 purchase money note and decreeing to him a lien against that part of the fund arising from the sale of said real estate belonging to A. H. Temple, the complainant, P. M. Bewley, administrator of said Temple, excepts and prays an appeal to the next term of the Court of Appeals sitting at Knoxville.

"The court declines to grant said appeal at this stage of the cause.

"By consent of the parties, this cause is made a vacation case and upon the incoming of the master's report, if the parties agree upon the time and place for its further consideration by the Chancellor, it may be then submitted for final hearing."

The report of the master was filed and the cause heard before the Chancellor on exceptions thereto filed by both complainant in the original bill and defendant and cross-complainant Coleman, and upon the entire record, when the court in a voluminous decree, dealing minutely with the items thereof, summarized the results of his holding as to the partnership as follows:

"The result is that after charging said Coleman as surviving partner with all of the assets of said partnership with which he is entitled to be charged, as above decreed amounting to the sum of $2188.90 and crediting him with all of the disbursements with which he is entitled to be credited, as above decreed amounting to the sum of $1502.90, there remained in his hands as of February 23, 1924, assets belonging to said firm in the sum

of $686, one-half of which to-wit, $343 belonged to the estate of said Temple, deceased, but subject to the charge against said estate in favor of said firm of $214.80, as above decreed, leaving the net amount in the hands of defendant Coleman in cash, due said Temple's estate of $128.20, upon which he is entitled to pay interest from February 23, 1924, it appearing that he has made personal use of said funds, which interest to this date amounts to the sum of $39.10 making a total due from him to complainant administrator, the sum of $167.30, which sum complainant will have and recover of said Coleman together with all the costs of this cause, except the costs incident to the sale of said real estate under defendant's cross-bill, for which execution is awarded.''

The decree then proceeded:

''It appearing that the proceeds of the sale of the real estate sold in this cause has not been distributed and costs incident to said sale has not been adjudged. Out of the proceeds of said sale the Clerk and Master will first deduct all of the costs incident to the sale of said real estate under cross-complainant. Coleman's cross-bill filed in this cause including a fee of $75 to McCanless, Taylor & Bell, as adjudged by a former decree in this cause and a fee of $12.50 to A. T. Drinnon, guardian ad litem for the minor defendants. The Clerk and Master will also ascertain what unpaid paving asessments were due on said real estate to the town of Morristown on the date of the sale of said real estate' and also what taxes if any lawfully assessed against said real estate due to the State of Tennessee, Hamblen County and the Mayor and Aldermen of the town of Morristown were unpaid and will pay same out of the proceeds of said sale, taxing same as a part of the costs of the cause. The remainder of said fund the Clerk and Master will distribute to the parties thereunto lawfully entitled, namely W. C. Coleman, one-half; one-third of the remaining half to cross-defendant Betty Temple, widow of Hale Temple, she being entitled to same as dower. One-fifth of the remaining two-thirds of said one-half interest will be paid to Emma Coleman, Gertrude Payne, Pearl Bell, and Will Temple each, and one-tenth of same to John Temple and one-tenth to Earl Temple, being the children and heirs at law of said A. H. Temple, deceased.''

Both sides excepted to the decree and both sides appealed which were conditionally granted. Defendants and cross-complainants failed to perfect their appeal and have acquiesced therein. Original complainants and defendants to cross-bill filed exceptions thereto as follows:

"Complainant Bewley, administrator excepted to that part of the foregoing decree allowing credit to defendant Coleman on settlement of his accounts, for the items of taxes and insurance paid on said building and repairs made on same after the death of said Temple, aggregating the sum of $138.20, because (1) if the title to said real estate was vested in said Temple and Coleman as tenants in common and the same was not partnership property as held by the Chancellor in a former decree then these items are not properly chargeable against the partnership assets but are chargeable against the real estate itself and should be paid out of the proceeds arising from the sale of said real estate; (2) because, as insisted by complainant said real estate was in fact and in law partnership property, notwithstanding the recital in the deed under which it was held to the effect that Coleman and Temple took it as tenants in common, which it was the duty of said Coleman as surviving partner to sell as quickly as possible after the death of said Temple to wind up said partnership business, and all of the items of account embraced in this exception were items that accrued as the result of defendant Coleman's wilful failure or culpable neglect to discharge his said duty. Complainant also excepted to that part of said decree as ordered the Clerk and Master to pay taxes and unpaid special paving assessments assessed against said real estate, out of the proceeds of said sale for the same reason stated above, it not appearing that any taxes or special asessments levied before the dissolution of said partnership were unpaid on the day of said sale. Complainant also excepted to that part of said decree as ordered the Clerk and Master to distribute half of the net proceeds of said sale to the widow and heirs at law of said Temple and charged the costs incident to said sale, including counsel fees, against the proceeds of said sale, and prayed an appeal from all of said decree hereinabove excepted to, to the next term of the Court of Appeals, sitting at Knoxville. Complainant also renewed his prayer for appeal to said Court of Appeals from the decree rendered in this cause at a former term in which it was held that said Temple and Coleman were tenants in common and not partners in said real estate and dismissed complainant's original bill in so far as it sought to compel said Coleman as surviving partner to sell said real estate and in sustaining said Coleman's cross-bill and decreeing a sale of said real estate thereunder and adjudging costs and attorney's fees to be paid out of the fund arising from the sale of said real estate and in subrogating said Coleman to the rights of the original holder of said $1000 note and decreeing to him a lien upon that part of the funds arising

from the sale of said real estate belonging to the estate of said A. H. Temple, deceased, which appeal was at that time denied. The court at this time grants the appeal prayed by complainant, both from the former decree and the present decree upon complainant executing a proper appeal bond or otherwise complying with the law. On his application complainant is allowed thirty days from the rise of the court in which to file said bond or otherwise complying with the law, and upon the filing of said appeal bond or otherwise complying with the law the Clerk and Master of this court will make a true and perfect transcript of this entire record including the record and file from the County Court of Hamblen Court styled W. C. Coleman v. Betty Temple, et al., and the inventory of the partnership estate of Temple and Coleman filed by said Coleman, as surviving partner, in the office of the County Court clerk, but omitting from the record all process, bonds, etc.''

Original complainant Bewley perfecting his appeal assigns the following as errors:

### I.

''The Chancellor erred in decreeing that said W. C. Coleman and the heirs at law of A. H. Temple, deceased, were the owners of said real estate as tenants in common, and that said real estate was not partnership property.

### II.

''The Chancellor erred in not finding and decreeing the value of depreciation on said house and lot to be the difference between $1000 and $387, the amount for which it sold, to-wit, $613 and charging said loss to said Coleman.

### III.

''The Chancellor erred in sustaining said Coleman's cross-bill, and in adjudging costs including counsel fees, incident to the sale of said real estate to be paid out of the proceeds of said sale, and in dismissing complainant's original bill as to complainant's right to compel said Coleman to sell said real estate as surviving partner and to account for losses on same due to his wilful failure to perform said duty.

### IV.

''The Chancellor erred in allowing said Coleman credit on settlement of his partnership accounts, for the items of taxes, insurance and repair bills, aggregating $138.20. Same should have been disallowed in any aspect of this case.

### V.

''The Chancellor erred in directing the Clerk and Master to pay the special paving assessments against said property and taxes that were due and unpaid on the day said real estate was

sold, out of the proceeds of the sale of same. In any aspect of this case, same should have been adjudged to be paid by said Coleman, or out of funds in this cause going to him.

We are inclined to believe that the contest over whether the store house and lot shall be regarded as held by the two partners as tenants in common, or as partnership property so far as it affects this case is over a distinction without much difference except as it may work itself out in the questions of cost with which the funds are finally to be affected.

We think under the law the partners undoubtedly held the real estate in question conditionally as tenants in common, but regarded in equity as personalty in so far as the demands of the partnership might require or until the same was fully wound up and settled.

In R. C. L., vol. 20, page 854, sec. 61, it is said: "There is some uncertainty as to what must be shown in order that real property may be considered a portion of the firm assets. The rule which has the support of the best authority, and which rests on sound principle, is the one which makes the intention of the parties at the time of taking the conveyance the proper test." Here these two men had agreed upon entering into the partnership in the mercantile business, they found the facilities for its proper conduct ready to hand in the property and business being conducted by Mr. Smith, they bought him out "lock stock and barrel," including the store business and lot, the merchandise contained in the house, all for a lump sum of $1800, and walking in continued the business. Hale it seems at the time advanced $800, and they gave their joint note to Smith for $1000, payable one year after date. They were to be equal partners. Though Coleman shortly thereafter put into the firm $100, it was arranged at the time that when the note became due Coleman was to pay in the balance due on his subscription in taking up the note.

It thus resulted that their starting capital invested in the enterprise was partly cash advanced by Temple and partly credit represented by their note, and their agreement respecting its payment making them equal, the assets of this enterprise when it started were therefore the store house property and the goods, which together represented an outlay of $1800. The storehouse was used in the conduct of the mercantile business until the partnership was dissolved by the death of Hale on the 23rd of December, 1923.

This petition was filed May 29, 1924, and was answered by two of the defendants denying a tenancy in common claiming that the property was assets of the partnership and insisting that complainant should sell said real estate and wind up the partnership, and praying that the answer might be taken and treated as a plea in abatement to the bill.

Mrs. Emma Coleman, who was the wife of petitioner, was an heir of Temple, in company with two other heirs, joined in with the purposes of the petition. Some proof was filed in the cause, and it was heard on the 6th day of January but final decree was not entered until September 6, 1926.

The court believing himself without jurisdiction sustained the plea and dismissed the cause.

The present bill was filed January 7, 1927.

Respecting real estate as assets of a partnership it is said in R. C. L., vol. 20, sec. 61, p. 854, that "The rule which has the support of the best authority and which rests on sound principle is the one which makes the intention of the parties at the time of taking the conveyance the proper test" but that "In general the theory of tracts underlies the whole subject of partnership real estate, each partner being considered a trustee for the others to the extent of his proportionate interest in the firm."

It is to be gathered from the acts and declaration of the parties Ib. page 856, sec. 63.

"One of the most important circumstances leading to the conclusion that the partners intended to treat the real estate as belonging to the firm is the fact that the firm funds may have been used in purchasing the property.

The fact that the land has been purchased with firm assets has been regarded as raising a presumption that it was intended to form a part of the partnership property, and practically all authorities agree that the fact that the property was bought with partnership money, and that it is used in the partnership business are sufficient to impose upon the property the character of partnership real estate although the legal title may be in the names of the individual partners." Ib. page 857, sec. 64.

After citing other sales in section 65 of the same book on page 858 it is said:

"At any rate there is no doubt, where it appears that the lands were purchased for partnership purposes, with partnership funds for the use of the partnership, that such lands become partnership assets even in a controversy between partnership creditors and private creditors for priority."

In the case of Hunt v. Benson, 2 Humphreys, 459-60, where Benson, a partner, had employed a portion of the profits of the firm in the purchase of property, among which was a house and lot in Nashville and took title in his own name, the question was as to whether it belonged to him individually or to the partnership. The court said:

"There is no controversy but that where it is purchased for partnership purposes and on the partnership account, no mat-

ter in whose name the purchase is made, and whether the legal title be in one partner or in all, equity decrees it partnership property.''

This case citing authority continued further:

"The circumstance that the payment was made out of the partnership funds, in the absence of countervailing circumstances will be decisive that it was intended to be held as partnership property.''

Added to this, the defendant and cross-complainant Coleman listed under an inventory authenticated by their oaths the storehouse and lot as partnership assets in complying with chapter 163, of the Acts of 1903 (Shannon's Code, Sec. 3118a).

In the case of Moreau v. Saffarans & Co., 3 Sneed, 596, the general principles supporting the court's action in the disposition of the case were definite. The court said:

"Upon general principles, it would seem that real estate purchased as partners, with the partnership funds, and for the use or benefit of the partnership is to be regarded, in respect to the legal title, as an estate held by them as tenants in common, but subject to a trust, implied from the relation of the parties and nature of the case, for the benefit of the partnership, until the partnership accounts are settled and the partnership debts are paid. Usually and properly (as is the case in this deed) the conveyance is to the partners as tenants in common by name.

"But in the view of a court of equity it is unimportant in whose name the purchase amy have been made, or the conveyance taken, whether in the name of a stranger; if purchased, in fact with partnership funds and for partnership purposes it will be treated in equity as belonging to the firm.''

In the last analysis, we think it will appear that the house and lot and stock of goods were bought with partnership funds, part cash, which, as admitted, were partnership funds, and both in joint obligation of the partners, and which though paid after the death of one of the partners, and by the survivor with his private means, was nevertheless to the extent of his indebtedness to the capital stock, but a discharge of his own obligation to the firm and was therefore assets of the firm.

This real estate at the time was intended to be used and was used as indicated in the business, until it terminated.

We are therefore of opinion that the learned Chancellor was in error in not holding the real estate primarily as an asset of the partnership.

The cross-bill did not we think resist such ministry if such property were found to be so charged, and except as to the necessary modifications which the inclusion of this item in firm assets are con-

cerned in reaching a balance between the partners we agree with and are quite content with the Chancellor's analysis in reaching such balance. It will or may be also essential to free it from any influence which may have attached by reason of his finding that there was a tenancy in common of the interest asserted by the cross-bill and the primary character of the relief granted thereunder and as the same may have affected the partnership fund.

What is meant to be understood however may be better made manifest in the further disposition of the case, for instance in assignment No. 2 it is claimed that the Chancellor erred in not finding and decreeing the value of depreciation on said house and lot to be the difference between $1000 and $387 the amount for which it sold, to-wit $613 and charging said loss to said Coleman.

We do not think so. We think it should be charged to loss and borne equally by the partnership, and that it should be so considered in reaching any balance for distribution as the law might direct.

There has been a sharp issue as to the character of title in which this property was held, respectable opinions supporting contrary contentions. There was a change of opinion, upon advice, it seems, on the part of Mr. Coleman after he filed the inventory, who thereupon instituted the proceeding in the County Court for its partition. This proceeding was allowed to drag due as much we think to the negligence of the one side as to the other, when finally tried and dismissed upon the ground that the court was without jurisdiction to settle these preliminary questions as to title, the decree was withheld by agreement for some months; besides property sold by a partner thus shadowed by doubtful questions as to his right and a probably necessary suit against the heirs to remove cloud or be vested with the apparent legal title, was not calculated to bring its value, we do not think Coleman was guilty of such negligence under the circumstances as should saddle him with this entire loss and this assignment is overruled.

It would likewise follow, that if Coleman was not guilty of actionable negligence in not selling the real estate he could not help the accrual of taxes with which it became charged and therefore the Chancellor was not in error in allowing credit for their discharge nor for the insurance and repair bills as claimed. His action in holding him chargeable with paying the taxes due from Smith was correct and is not complained of.

The fourth assignment is therefor overruled; also the fifth assignment which partakes of the same nature.

The third assignment, among other things insists that the Chancellor erred in dismissing complainant's original bill as to complainant's right to compel said Coleman to sell said real estate as

surviving partner, and to account for loss on same due to his alleged wilful failure to perform his duty. While we do not believe as indicated he should be held accountable for such loss we are of opinion that the original bill should have been sustained to wind up the partnership, and that the cross-bill to partition or distribute the fund should have been held a secondary affair. If there should appear to have been any balance after winding up the partnership, it would have been proper to distribute it under the cross-bill; and such part of the funds, as might be going to the heirs of Temple deceased turned over to the administrator provided it should appear that it was necessary to resort to the real estate for the settlement of the personal obligations of the deceased. But first the funds should have been held applicable to the entire settlement of the partnership including any balance that might be found due Coleman together with cost incident to the filing of the original bill, which should include cost of this court and a reasonable fee to be allowed the administrator's counsel and, only the remaining funds if any distributed under the cross-bill charged with the payment of fees and cost incident to the cross-bill. Should there not be enough of such remaining funds to pay the .dues allowed, complainant in the cross-bill will pay all costs incident to same.

To the extent indicated the assignments of error are sustained and the decree of the Chancellor will be modified in accordance with this opinion and otherwise affirmed. A decree will be drawn here in accordance with this opinion and the cause remanded for a restatement in accordance therewith and for the ascertainment of fees to be allowed counsel for the administrator. Costs of this court will be divided, between original and cross-complainant and executions awarded therefor.

Should it appear that there is not enough partnership funds to settle the same, any cost of reference will be adjudged by the Chancellor.

Portrum and Thompson, JJ., concur.